Vincent, we do have several empty seats if people could squeeze a little bit. And so there's no need for people to stand. What's the temperature? Warm up. Next case is IMAGECUBE v. BOEING, MTS Systems and Aramat, 2010-12-65. Mr. Hostany. Good morning. Can an alloy begin with an alloy? Yes, your honor. May it please the court. What we have here just as a representative claim is forming a dispersion of components A and B, forming the dispersion into a layer, homogenizing it by means of radiation so that what results is an alloy. And basically what you're building is a solid part. The focus of the case in the court below has really been about metals because the accused infringement involves purely metals. And so the portions of the patent that deal with polymers and ceramics have not been a matter of discussion at all. Why is anything more before us than the question of claim construction? Because in your rule 54B request, you said that you couldn't win under the claim construction adopted by the district court. I think that if we get a correct claim construction, then where components are correctly defined, then what we've got to do is go back and analyze in the infringement whether they're using mixed powders and to what extent they're using what they call their titanium. I don't think that answers my question. I'm sorry. In requesting a rule 54B certification, you said stipulate to the judgment because we can't win under the district court's claim construction. Ah, okay. So that obviously preserves your assertion that the district court adopted the wrong claim construction, but it seems to me that's the only issue. For example, you didn't say anything about discovery or anything like that. You said we can't win under the claim construction, so enter a 54B. We had one claim left that was not affected by Judge Dow's claim construction. That was claim 51. Well, you said as to that that we're intervening. Absolute intervening rights. Right. That's what I meant. But with respect to the other claims, why is anything more before us given what you told the district court in requesting the 54B certification other than the issue of claim construction? I may be mistaken, Your Honor. I think it's the scope of the infringement. You didn't say that. You said we can't win under the claim construction, so enter a 54B. Why aren't you stuck with that? If we correct the claim construction, then what I am saying is that I'm saying, and maybe you're right, maybe this is a question for just the district court, but I thought the claim construction went awry. Well, that issue is clearly before us, but it would seem to be the only issue before us. Okay. These issues about discovery and other things, you seem to have given up when you asked for the 54B certification. It certainly wasn't my intent. I thought that one of the things that hampered the court below was that it did not avail itself of some sources of extrinsic evidence, which I thought would have helped it understand the patent better than it did. I do think you can reach the correct conclusion on the claim construction by looking at the patent alone, and I don't think the district court did that. So, you may well be correct that that's the only issue that you have to decide here, and everything else is, if we go back, then everything else is for the district court. Okay. You may well be right. Is that the discovery issue that you were arguing about related to the potential for other infringing products? That's correct. It did? What does that have to do with claim construction? Well, I always like to know everything I can about the processes that are accused of infringement, and I, as a trial lawyer, I hate to amend a complaint to say that Boeing is using a machine made by Arcam, and that we have a basis for believing it infringes, and then get absolutely no discovery whatsoever. I also thought that the claim construction depended in significant part on things that were without any adequate evidentiary basis, maybe no basis at all. Also, wasn't the ruling here simply the ruling on summary judgment directed only to the single powder asserted products? I believe that's correct, Your Honor. It was. Then the ruling is not relevant to any other product that may exist, that arguably would be the subject of another process on another day. I don't even believe there's a single powdered alloy. That's the term that the defendants used in the district court below. Their only basis for it was lawyer argument and a declaration from a declarant who gave no basis for his knowledge and had no experience with the process. And in our reply brief, I think we pointed out that he came along after the process was developed by Dr. Arcella, who had since retired. So, I don't accept the notion that there is a single powdered alloy. Not at all. Well, you have to accept it for purposes of this appeal, right? For the purposes, yes, I suppose I do. I just do not think that the public record, that the evidence that we had available to us demonstrates that a single powdered alloy, in fact, exists in the defendant's processes. I don't think it does. With respect to that alloy, am I correct that your argument, or at least your argument in part, is that that single powdered alloy can exist in different phases and that those different phases can be different components consistent with the claim? That's correct, Your Honor, because if you look at the phase diagrams, figure 2 and figure 4, and I don't think the district court gave adequate attention to argument about phases. I think the court mentioned that, my golly, phases is mentioned once in the patent. Phases aren't mentioned once, they're mentioned numerous times. And the phase diagram in the box, with 100% A on the left and 100% B on the right, shows you what can happen as the relative compositions of the two change. And what you can have are combinations. But why are two different phases of the same alloy different components? Because the patent says they can be. It gives an example at column 8 and column 9 of a liquid phase component that's an alloy of A and B, and it designates that composition by A1B1. And then it says you can have a solid phase component, they use the S in brackets for solid and liquid, that consists only of component A. However, if you go further in column 9, it goes on to say that if you wanted to, you could also substitute for those solid particles A, a solid that consists of A and B. So what you have now is a liquid that's A and B, and a solid that's A and B. And those would be different, in your view, different portions. Well, they're different in at least because one is a liquid and one is a solid. But it would satisfy the claim limitation. They'd be different portions if one's a liquid and one's a solid. Yes, I think they would. So basically the question is whether we should say that different portions is satisfied by different phases. Yes. I think the district court was incorrect when it reached the conclusion that you had to start with something that was non-alloyed. I don't think the patent specification supports that at all. I think the patent specification says the contrary. There's claim 14 that mentions that as well, but also particularly the discussion of columns 8 and 9. And it also mentions repeatedly that you can use phases, and the phase diagrams are exactly that. They show phases where you have combinations of solids and liquids. Alpha and beta phases are what the defendants have in their titanium aluminum. Yes, but they're not examples, are they, that show different phases of the same alloy is satisfying the two portions limitations. Are there? I think there are, and I think it's figure 5. Figure 5? I think so. Are the phases distinguishing between liquid and solid? Is that the meaning of phase in the specification? Liquid, solid, or gas. There's also a mention of the possibility of a gaseous phase, as I recollect. In other words, where is it different phases of the same solid material? I'm sorry, your honor? Where are the different phases of the same solid or liquid material? I'm not certain. I think figure 2 and figure 5 both involve, well, it depends on the temperature too. I think both of those involve a liquid and a solid. My recollection is that one of the dependent claims indicates that you can have a mixture of more than one powder. So you'd have two solids in that particular instance. To follow up on Judge Lurie's question, where do these figures or where does the specification show that having different phases of the same alloy is within the two portions then? That's the problem. Yes, it's clear that the specification contemplates that you could have different phases, but it doesn't say different phases of the same alloy, does it? Yes, I think it does. Where? I think the figure 2 discussion says that you can have different phases, liquid and solid, of A and B. They are both alloys of A and B. Yeah, but that would simply be a component in different phases. The claim calls for two components. I don't see why they are not different components, because the patent doesn't restrict the component to being a... ...in the example given in the patent. You have two components. You can also have a solid which is just A, in which case you have a phase which consists of just A. Where does it show that? That's the problem. My recollection, Your Honor, is it's figure 2 in the discussion column 8 and column 9. The patent gave, to be fair, to the patent EOA. Your Honor, we can't decipher. It's got to be more specific than that. It's hard to read figure 2, and column 8 and 9 has a lot of material in it. Where specifically did columns 8 and 9 tell you that having two different phases of the same alloy is sufficient? Except to say that the inventor was describing an embodiment of what he believed his invention to be. I don't know that I can say it contains precisely that sentence, Your Honor. I do say this. I think it was a good reason. That's a good reason for the judge to have given more consideration to the declaration of Mr. Lawton than it did. And I think that must be a good reason for us to have asked Dr. Arcella about the subject as well. This is a complex technical area. The patentee gave a lot of examples, and I don't see how he limited his invention in doing so. His dependent claims give further variety to his invention. And yet, we have an invention that's been confined to a specific construction by the use of words that don't appear in the patent, such as discreet. That, I don't think, is a really good way to go about claim construction. We're into your rebuttal. Would you wish to use it now? No, I will stop, Your Honor. Thank you very much. Mr. Hoover. Thank you, Your Honors. May it please the Court? Your Honors, you asked Mr. Hassany about some specifics in the patent. I would point to Column 2 and Column 3, where the patent expressly states that the dispersion of materials… Which line are you reading from? Pardon me, Judge? Line. Let's see. Column 2 at lines 24 through 30 refer to a dispersion that is capable of alloying. Subsequently, at Column 2, line 65, continuing to Column 3, it refers to the dispersion as being non-alloyed. And then, subsequently, at Column 3, line 25, the specification teaches us that the dispersion is unalloyed. The figures… Are you saying that neither of the components, A and B, can be an alloy?  No, Your Honor. In fact, the specification teaches Component A, Component B, which are discrete and different. And, in fact, in Mr. Hassany's brief on page 6, he refers to the components as being two different materials. That's where the Court's claim construction of discrete is correct. How about Column 6, where you start with an alloy? One of the components is an alloy containing 30% gallium and 70% aluminum. And then there is added to that component, A, which is powdered aluminum. And then you get an alloy containing gallium, aluminum, and aluminum. Correct, Your Honor. And not surprising, it's got a greater percentage of aluminum than the starting material. But you're starting with an alloy. So why can't you start with an alloy and end with an alloy? You certainly can. And, in fact, there's teaching in Column 9, which I think Mr. Hassany is referring to, where you can have an alloy number 1 and an alloy number 2. And there's general teachings in the patent of that as well. Alloy, first component can be an alloy of A and B. The second component can be an alloy of A and B. So why don't you infringe? Because in the claim, we start, or the claim calls for two different components, two discrete things that are unalloyed when they start. When we started with our material, the only material that's at issue on this appeal is our single-powdered alloy. Mr. Hassany has taken great exception to that term. We can call it a pre-alloyed powder, which is a term he likes better. They're the same thing. We've internally called it a single-powdered alloy. But we start with a single material. It's already alloyed. We then irradiate it. Which is okay within the claims. No, it's not. In fact, just starting with something that is an alloy is not outside the scope of the claim. That could be one component of a two-component mixture. So certainly if we started with the titanium alloy and then we added something to that, then I think there could be potentially infringement there, yes. But we didn't do that, not with the alloys that are at issue on this appeal. What you're saying is A and B can't be the same alloy when you start. Correct. That's because the specification teaches that they are unalloyed. If I have in my hand— No, that doesn't—that's confusing. Okay. Because there's no reason you can't start with two different alloys and combine them to create a third alloy. Correct. Right? Correct. So there's nothing wrong with starting with alloys. They just have to be different from each other. Exactly. That's our position, Your Honor. That is correct. Well, Mr. Hostany argues that during the course of the process, at least part of the starting component changes phase, and at that point there are two components. Well, if you have a—the specification, in fact, teaches expressly, I believe it's column 4, line 30 in that paragraph, that homogenization does not require complete mixing. A homogenized material can include multiple phases. If I have a material in my hand, the metal in these glasses perhaps may contain two phases, alpha and beta phase. The specification teaches us that that is a homogenized item. That is an alloy. That is not a mixture of two components. If I start with titanium, aluminum, vanadium alloy, and I irradiate that alloy, and I end up with an alloy that has the same composition, titanium, aluminum, vanadium, without forming a new alloy, without forming a new alloy of different chemical composition, that is outside the claims. Well, it certainly isn't outside the description of the preferred embodiments, which says this requires sufficient molecular elemental mixing between the components to result in properties either physical or chemical, which are different from the properties of the individual components, physical or chemical. Well, in fact, the alloy, the specification teaches that as one criterion for homogenization, but it also teaches that you must start with components that are unalloyed at the time that you start, and then using the homogenization process, bring them together. The resulting product may be physically different from the resulting alloy, and it may have some chemical difference in that it may be able to be dissolved differently or somehow affected differently in some chemical process. But the fact remains that the claims require dissimilar unalloyed starting material under the plaintiff's view. Well, it doesn't say unalloyed starting material. Actually, it's a column that... It gets confusing when you use that terminology because you've agreed that they can be alloys to start with. That's correct. They are unalloyed with one another, I should say. A and B, the components A and B are not alloyed with one another at the start. But wouldn't that be true if the two components at the start, or at least at some point during the process, consist of a component in one phase and a component in another phase? Those are not alloyed together until the process is completed, and during the course of the process they are two separate components, are they not? I struggle to think how that could be, Your Honor. I'm just trying to think of how that example would work. If I have at the same temperature the same thing, you're talking about it's all... Well, as I understand the facts in this case, and you correct me if I'm wrong, that the accused product at some point starts as a powder and then is changed in phase, and then at the end of the process is a completed alloy. So that at some point during that process there would be the starting powder material and the changed phase portion that's undergoing this alloying. Well, generally I think your description of the process is more or less correct. What happened was there was, say, a plate of solid metal. A laser would come along and would cut the shape desired for a particular layer and make a little molten pool of metal, and then into that molten pool of metal more metal was poured in, and the resulting metal would melt and would build up a little region of metal that was composed of the very same metal. Now, you start with titanium, aluminum, and vanadium, and you end up with titanium, aluminum, vanadium in the same proportions? Yes. It's the same starting material, the same block of metal. There were instances that Aramet used that did not involve exactly the same metal. Those were not subject to the summary judgment motion, so those are not an issue on this appeal, but this appeal involves only the issues, only the case where he did start and finish with the same metal material. Am I correct that the material you're starting with is an alloy in particle form? Yes, Your Honor. In other words, it was formed of an alloy and then ground up into a powder? Yes. So that the only difference is sort of like the difference between snow and ice? Snow and ice is still different, Your Honor. Snow and ice are two solid phases of water. But it's water when you start as snow, and it's water at the end when it melts and freezes together as a block of ice. It's still water. That's true, yes. So you could analogize it, I suppose, similar that we had solid metal and it was molten, and then it reformed into, instead of being a powder, it reformed into prototype airplane part. But it was an alloy to start with, albeit in powder form, and it's an alloy when it's done? Yes, and the same alloy in each instance. So you don't have two components to start with. Yes. You have one component in alloy particle form. Yes. Yeah, but I'm not sure that's true, because if I understand it correctly, the original powder here, it can be a mixture of phase A and phase B, and that phase A, the phase A alloy is different from phase B in the vanadium content of the material. No, there's no actual evidence of that, Your Honor. But that's their contention, right? Well, that is their contention. I think that contention is not supported by evidence in the district court. What about the Lawton affidavit? Did he say that? Mr. Lawton did say, I have not worked in the metallurgical field. But put aside the question of whether he's competent. Lawton did say that, right? He did say that. I don't believe he's competent to say that, but he did say that. Well, suppose he were competent. Would you have a problem? No, because even under the correct claim construction, phase changes don't matter. The specification does not teach an instance where simple phase change within an alloy is an example of homogenization. There is an example of that in the Brown subclass. I'm confused. I can understand phase change between solid and liquid and gas, okay? What I'm having difficulty is characterizing a change where the content, the vanadium content of the molecule or particle changes depending on the heat or the phase that it's in. Isn't that arguably a different alloy when you have phase A that has vanadium content X and phase B with vanadium content Y? No, Your Honor. And also the claims as written would not subsume that instance. Let's say you had A and B and they were slightly different in vanadium content. The claims on appeal call for components and then homogenization of those components. The components must be dissimilar materials, and the specification teaches expressly that they are not already alloyed with one another. So if I have a block of material that is an alloy and it has little crystals in it or regions in it that have slight dissimilar, it's not completely uniform, but it's got the little regions or pockets where the vanadium content is higher here. Are you saying you can have the same chemical content for the crystal consisting of the three materials, but within the crystal, the lattice can be different from one to the other, and that's a different phase? Yes. That's expressed in the phase diagram. There is phase diagrams that do discuss that, yes, Your Honor. The patent does not teach that a change in phase is an example of homogenization, nor does the patent teach that two components can be multiple phases of the same alloy. Didn't the district court err when it construed component to be not alloyed already with another component? Haven't we gotten to the point where one of the starting materials, A and B, can be an alloy? So didn't the district court err in that respect? Well, not really, Your Honor. In fact, the component A, component B, they must be dissimilar materials prior to homogenization, where homogenization means being the same. And neither one being an alloy? Either one or both can be alloys. Can be, right. But not so long as they're unalloyed with one another. I think that's what the district court said. And is not already alloyed with the other component. Exactly. Exactly. The is an important word, with the other components. Yes. It can itself be an alloy. But yours is the same. You've got the three elements in an alloy to begin with, and you end up with an alloy with the same three components. Yes. You're just saying that the inner crystal formation is different, so they're in different phases. Actually, that's their argument, Your Honor. Their argument. I don't know whether the phases changed. But even if they did change, that's not an instance of infringement, because they were not components that were not previously alloyed with one another. The district court didn't say that the components themselves can't generally be alloys. And they certainly can. There is express teaching to that in the patent. Either component A can be an alloy, component B can be an individual metal that can be an alloy itself, just as long as they're different from one another. I'm making what turns out to be an argument for him. I don't want to suggest that we're alloyed with one side or the other. Can I ask you one more question? Yes, Your Honor. Are you suggesting that the end product here has the same differing crystalline structure as the starting material? There's no evidence either way in the record, Your Honor. I don't know what the crystalline structure is of the starting material and ending material. The plaintiff introduced an affidavit without having seen the process. Does the Lawson affidavit say that the end product has a different starting material? Yes. Yes. We do not believe, number one, that that matters, because under the district court's correct claim construction, the two components cannot be alloyed with one another. The specification expressly teaches that the two components are dispersed. They're a dispersion of two different things, not already alloyed with each other. So slight changes in the phase composition of a preexisting alloy, that cannot count. So it doesn't matter if the phases change. Even if the phases did change, even if our claim construction were incorrect, let's put it that way, they did not introduce evidence under competent evidence. That's the problem, because they didn't get full discovery. You've got to stick with the claim construction. Okay. I'll be happy to stick with claim construction, Your Honor, because although we did offer discovery and the discovery was refused, but nonetheless, the- Mr. Hoover, I think you've exceeded your time, so we'll give Mr. Hostany some rebuttal time. Thank you, Your Honors. Thank you, Your Honors. If I look at claim one, the steps are providing a dispersion containing components A and B. The example given at column nine, lines five to 21, has components A and B. It's got a phase, liquid phase that contains A and B, and it's got, as an alternative, a solid phase that contains A and B. Titanium, six aluminum, four vanadium has alpha and beta phases. One's body, centered cubic. One's hexagonal, close packed. Vanadium is less soluble in one than it is in the other. They are different. Forming the dispersion into a layer, well, we'll get into that if we go back to the district court. Where did you argue to the district court, in connection with the claim construction, that two different portions meant two different crystalline structures? I never used, to my knowledge, Your Honor, I never used the word that portions represented, we never used the word portions, put it that way. Mr. Lawton's declaration does address how- His declaration may address this, but I don't understand that that declaration was submitted in connection with the claim construction, was it? It was submitted in connection with the response to the summary judgment motion, in which the defendants moved for partial summary judgment of non-infringement because- The answer is it was not submitted in connection with the claim construction. I respectfully disagree, because the question of non-infringement and claim construction was merged. Now, I grant you, I don't think I used the word portions, Your Honor. Well, where did you argue, in connection with claim construction, that he should define portions in terms of different crystalline structure? In response to the defendant's motion for partial summary judgment of non-infringement, our response to that motion. In terms of a claim construction issue? Yes, I believe so. What page? I cannot tell you that, Your Honor. There was voluminous briefing on this issue, and on the refusal of discovery, just briefly to touch on that, I was given 20, I was given 18 business days to examine an unknown number of documents in an unknown number of different locations, analyze them, copy them, depose people, get transcripts, and write a summary judgment response. All of this came on the heels of the fact that I was recuperating from surgery at the time. It was an impossible task for any human being to accomplish. If you look at claim one, what I come out at is that claim describes both what occurs in column nine and what occurs in what we know about the defendant's process. I agree what we know about the defendant's process isn't perfect. A change of phase is not homogenization. I don't know how they can say that when you look at a phase diagram and watch the curve on the phase diagram representing homogenization. Boeing is the party that did not read the phase diagram correctly, as we pointed out in our reply brief. I don't think this is easy stuff. So when you refer to phases, you're talking about internal crystal structure. Yes. Yes. And I think I have nothing further unless the court has any more questions. Thank you, Mr. Hauston. We'll take some of your time. Thank you.